**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1
2
3
4
5
6
7
8                   UNITED STATES  DISTRICT COURT
9                    Northern District of California
10                          San Francisco
11   KATHLEEN M. LUCAS, et al.,              No. C 11-01581 LB
12                  Plaintiffs,         **ORDER GRANTING DEFENDANT'S**
                                        **SECOND MOTION TO COMPEL**
        v.                              **ARBITRATION**
13
     HERTZ CORPORATION,                 [Re: ECF No. 37]
14
                  Defendant.
15   _____/

16                       **I.  INTRODUCTION**

17      Kathleen Lucas and Dan Martin (collectively, "Plaintiffs") filed the instant action against car

18   rental company Hertz Corporation ("Hertz") in San Francisco County Superior Court on November

19   29, 2010.  Notice of Removal, ECF No. 1 at 5-12 ("Complaint").[1]  Hertz removed the action to this

20   court on March 31, 2011.  Notice of Removal, ECF No. 1.  Hertz now moves, for the second time,

21   for an order compelling Plaintiffs to arbitrate their claims pursuant to an arbitration agreement

22   incorporated by reference into the car rental agreement that Mr. Martin signed.  Motion to Compel

23   ("MTC"), ECF No. 37.  For the reasons explained below, the court GRANTS Hertz's motion.

24                           **II.  FACTS**

25      Mr. Martin, who is a resident of the United States, rented a Daihatsu automobile from Costa Rica

26

27   _____

28         [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page
     number at the top of the document, not the pages at the bottom.

1  Rent a Car, a Hertz licensee, in Alajuela, Costa Rica on February 28, 2010.  Complaint, ECF No. 1

2  at 5-6, ¶¶ 3, 11; Motion to Compel, ECF No. 37 at 5; Opposition, ECF No. 44 at 7.[2]  The car rental

3  agreement, which is roughly half a page long and which was submitted by both Mr. Martin and

4  Hertz, sets forth the rental price and then states in relevant part:

> I hereby state that I have read the conditions on this Contract as set forth in the
> FOLDER JACKET CR001 and its addendum DCLA001, DCL002, DCLA003, the
> contents of which I fully understand as explained to me, therefore, I accept the
> conditions and execute this document in full conformity.

8  Calderon Declaration, ECF No. 39, Ex. A; Martin Declaration, ECF No. 40, Ex. A.  Mr. Martin's

9  signature is directly under this clause.  Calderon Declaration, ECF No. 39, Ex. A; Martin

10  Declaration, ECF No. 40, Ex. A.[3]  Mr. Martin's signature also appears on two of the addenda

11  mentioned in the clause (DCLA001 and DCLA002).  Calderon Declaration, ECF No. 39, Ex. E.[4]

12      The "folder jacket" referred to above is the paper sleeve into which the rental agreement is

13  placed.  Calderon Declaration, ECF No. 39 at 3, ¶ 6.  Hertz submitted a copy of the folder jacket that

14  Costa Rica Rent a Car used in February 2010.  *Id*., Ex. C.  Unlike the rental agreement and the

15  addenda, it does not require the customer's signature or contain any space for acknowledgment or

16  initials.  *Id*., Ex. C.  Employees of the Costa Rica Rent a Car are supposed to give the folder jacket

---

[2] Plaintiffs' complaint alleges that Mr. Martin rented the car on March 6, 2010, but both
Hertz's motion and Mr. Martin's opposition state that he rented the car on February 28, 2010.
*Compare* Complaint, ECF No. 1 at 5-6, ¶¶ 3, 11 *with* Motion to Compel, ECF No. 37 at 5 and
Opposition, ECF No. 44 at 7.  Documentation submitted by both Hertz and Mr. Martin also shows a
rental date of February 28, 2010.  *See* Calderon Declaration, ECF No. 39, Ex. A; Martin Declaration,
ECF No. 40, Ex. A.  As such, the court will proceed as if Mr. Martin rented the car on February 28,
2010.

[3] Mr. Martin says that the agreement is primarily in Spanish.  Opposition, ECF No. 44 at 5.
But it is a short agreement that consists primarily of the rental fees, and the clause quoted above is in
both Spanish and English.  *See* Calderon Declaration, ECF No. 39, Ex. A.

[4] It appears that the third addendum mentioned in the clause  – DCLA003 – comes into play
when a customer declines Costa Rica Rent a Car's collision damage waiver.  *See* Calderon
Declaration, ECF No. 39, Ex. E.  Here, both the first addendum – DCLA001 – and Mr. Calderon's
Declaration make clear that Mr. Martin accepted the collision damage waiver, so Mr. Martin did not
need to have signed the DCLA003.  Calderon Declaration, ECF No. 39 at 4, ¶ 9, Ex. E.

UNITED STATES DISTRICT COURT
For the Northern District of California

to the customer at the time a vehicle is rented.  *Id.* at 3, ¶ 6.  The folder jacket contains the following

arbitration agreement at the bottom-end of the fifth of five columns containing numerous legal

provisions typed in small, tightly-packed font:

> CHAPTER 5: APPLICABLE LAWS AND JURISDICTION
>
> The Parties herein executing this Contract, agree in that any and all disputes, claims, differences, disputes or controversies arising out of or in relation to any aspect of this Agreement, its business matter, performance, liquidation, interpretation, validity or any breach thereof, shall be resolved first by conciliation in accordance with the bylaws of the International Center for Conciliation and Arbitration of the Costa Rican-American Chamber of Commerce ("CICA").  The conciliation hearings will be in the Center (CICA) in San Jose, Costa Rica.  The conciliation will be address[ed] by a conciliator appointed by CICA.  If the controversy is not solved by conciliation in term on 15 days [sic], or in the event of which they are left aspects without solving within conciliation process the conflict will be solved by arbitration in accordance in CICA's Rules.  The parties hereby agree to submit voluntarily and unconditionally to its rules and bylaws and claim knowledge thereof.  The arbitration shall take place at the CICA in San Jose, Republic of Costa Rica.  An arbitration tribunal of three arbitrators shall decide the matters subject to the arbitration procedure.  The arbitrators shall be appointed by CICA according to its rules.

*Id.* at 4, ¶ 7, Ex. D.[6]

On March 6, 2010, Mr. Martin was driving the car to the home of the United States Ambassador

to Costa Rica for a social function.  Complaint, ECF No. 1 at 7, ¶ 12.  Ms. Lucas, who also is a

resident of the United States, was a passenger in the car.  *Id.*  After passing through the gate at the

home, Mr. Martin was driving down a steep driveway leading to the house when the car

unexpectedly began to accelerate.  *Id.*, ¶ 13.  He depressed the clutch and the brake pedal, but the car

did not stop.  *Id.*  The car crashed into a wall of the house, and Mr. Martin and Ms. Lucas were

injured.  *Id.*, ¶ 14.

On November 29, 2010, Plaintiffs filed suit against Hertz in San Francisco County Superior

Court, alleging causes of actions for strict liability and negligence.  *Id.* at 5-12.  In essence, Plaintiffs

claim that Hertz placed the defective car into the stream of commerce and failed to properly

maintain its safe condition.  *See id.*

Hertz now moves, for a second time, to compel Mr. Martin to arbitrate his claims.  Motion to

---

[6]Exhibit D to the Calderon Declaration is a closer view of the language found on the folder jacket.  Calderon Declaration, ECF No. 40 at 4, ¶ 8.

UNITED STATES DISTRICT COURT
For the Northern District of California

1 | Compel, ECF No. 37.[7]  Hertz argues that the rental agreement that Mr. Martin signed when he rented

2 | the car on February 28, 2010 incorporated by reference an arbitration agreement that requires him to

3 | resolve his claims by conciliation and arbitration in accordance with the bylaws of the International

4 | Center for Conciliation and Arbitration of the Costa Rican-American Chamber of Commerce

5 | ("CICA").  *See id*.  The conciliation and arbitration are to take place in San Jose, Costa Rica.  Mr.

6 | Martin opposed Hertz's motion.  Opposition, ECF No. 44.  The court heard oral argument on Hertz's

7 | motion on June 21, 2012.

8 | ### III.  LEGAL STANDARD

9 | Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be

10 | valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

11 | revocation of a contract."  9 U.S.C. § 2; *see AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740,

12 | 1746 (2011).  Section 4 of the FAA permits a "party aggrieved by the alleged failure, neglect, or

13 | refusal of another to arbitrate under a written agreement for arbitration [to] petition any United

14 | States district court . . . for an order directing that . . . arbitration proceed in the manner provided for

15 | in [the arbitration] agreement."  9 U.S.C. § 4.  If the court is satisfied "that the making of the

16 | arbitration agreement or the failure to comply with the agreement is not in issue, the court shall

17 | make an order directing the parties to proceed to arbitration in accordance with the terms of the

18 | agreement.  *Id*.

19 | The FAA reflects "both a 'liberal federal policy favoring arbitration,', and the 'fundamental

20 | principle that arbitration is a matter of contract.'"  *Concepcion*, 131 S.Ct. at 1745 (2011) (quoting

21 | *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and

22 | *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010)).  "In line with these principles,

23 | courts must place arbitration agreements on an equal footing with other contracts, and enforce them

24 | according to their terms.  *Id*. at 1745-46 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

25 | 

26 | [7] Earlier, Hertz moved to compel Mr. Martin to arbitrate his claims, but the court denied its
motion without prejudice because of evidentiary problems.  *See* First Motion to Compel, ECF No.

27 | 21; 4/27/2012 Order, ECF No. 36; *see also* Minute Entry, ECF No. 34 (hearing was held on April
26, 2012 during which time the court summarized its evidentiary and substantive concerns about

28 | Hertz's motion).

440, 443 (2006) and *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).   Nonetheless, when a question arises as to whether "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite."   *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (emphasis in original; citation omitted).

## IV.   DISCUSSION

### A.   Whether a Valid Arbitration Agreement Exists

As an initial matter, Mr. Martin challenges the existence of a valid agreement to arbitrate. Opposition, ECF No. 44 at 8-14.   As the party moving the court to compel arbitration, Hertz bears the burden of proving by a preponderance of the evidence the existence of a valid arbitration agreement.   *Olvera v. El. Pollo Loco*, 173 Cal. App. 4th 447, 453 (2009).[8]

First, Mr. Martin argues that because, as he declares, he either was never given a copy of the folder jacket or was given it after he signed the rental agreement, he and Hertz never clearly agreed to the arbitration provision.   Opposition, ECF No. 44 at 11-14.

"To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'"   *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).   When considering a motion to compel arbitration, the court must initially determine whether the parties agreed to the arbitration clause.   *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1283 (2008).   As stated above, there is no genuine dispute about whether Mr. Martin signed the car rental agreement that included language stating that he had read and accepted the terms and conditions as

---

[8] This is a diversity action under 28 U.S.C. § 1332. "It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law." *Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th Cir.1981) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).   Thus, in the absence of a choice-of-law provision, the court must apply California law with respect to contractual interpretation.   *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217-18 (9th Cir. 2008); *see also United States ex rel. Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989) ("Like a court sitting in diversity, we use the law of the forum state to construe the agreement.") (Miller Act case).

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-01581
ORDER GRANTING DEF'S MOTION TO COMPEL

1   set forth in the folder jacket.  The question, then, is whether the terms and conditions as set forth in

2   the folder jacket were incorporated into the car rental agreement that Mr. Martin signed.

3          "Under California law, parties may validly incorporate by reference into their contract the terms

4   of another document."  *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (citing

5   *Baker v. Aubry*, 216 Cal. App. 3d 1259, 1264 (1989)).  "For the terms of another document to be

6   incorporated into the document executed by the parties[, (1)] the reference must be clear and

7   unequivocal, [(2)] the reference must be called to the attention of the other party and he must

8   consent thereto, and [(3)] the terms of the incorporated document must be known or easily available

9   to the contracting parties."  *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 54

10  (1997) (citations omitted); *see also Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N.A.*, Inc.

11  No. C-11-0052 EMC, 2011 WL 1086035, at *3 (N.D. Cal. Mar. 24, 2011) (noting and applying

12  *Shaw*'s articulation of the legal standard for incorporation by reference under California law).

13         As described above, the car rental agreement specifically referenced the folder jacket and the

14  terms and conditions found in it and required Mr. Martin to acknowledge that he read and

15  understood them.  *See* Calderon Declaration, Ex. A.  It also required him to agree that he accepted

16  those terms and conditions and executed the car rental agreement in full conformity with them.  *See*

17  *id.*  Mr. Martin declares that he either was never given a copy of the folder jacket or was given it

18  after he signed the rental agreement, but this representation is immaterial because the terms of an

19  incorporated document must only have been easily available to him; they need not have actually

20  been provided.  *See Wolschlarger v. Fidelity National Title Ins. Co.*, 111 Cal. App. 4th 784, 789-91

21  (2003); *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748-49 (1994); *see also Reilly v.*

22  *WM Financial Servs., Inc.*, 95 Fed. Appx. 851, 852-53 (9th Cir. 2004) (affirming district court's

23  ruling that arbitration agreement was valid and enforceable even when plaintiffs contended that they

24  never received or saw a copy of the incorporated arbitration agreement because the arbitration

25  agreement was easily available to the plaintiffs).  According to Mr. Calderon, it is standard policy

26  and procedure for employees of the Costa Rican Hertz licensee to give the folder jacket to the

27  customer at the time a vehicle is rented.  Calderon Declaration, ECF No. 31 at 2, ¶ 6.  Thus, even if

28  Mr. Martin did not receive it, it appears that the folder jacket was easily available to him, and he

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-01581
ORDER GRANTING DEF'S MOTION TO COMPEL

UNITED STATES DISTRICT COURT
For the Northern District of California

1   does not declare facts to suggest otherwise.  Courts have enforced incorporated arbitration

2   agreements in similar situations.  *See Koffler*, 2011 WL 1086035, at *4 (holding, under California

3   law, that a set of general terms and conditions that included an arbitration agreement and that were

4   not provided to plaintiff (but were available upon request) were properly incorporated by reference

5   into a purchase agreement); *Wolschlarger*, 111 Cal. App. 4th at 789-91 (holding that an arbitration

6   clause in a title insurance policy was properly incorporated by reference into the preliminary title

7   report and thus was binding upon the insured even though the insured had not seen the policy or the

8   arbitration clause prior to approving the preliminary title report).  Accordingly, the court finds that

9   the arbitration agreement at issue in this case was properly incorporated by reference into the car

10  rental agreement and that Mr. Martin agreed to it.[9]

11      Second, Mr. Martin argues that Costa Rican law provides that when an individual is a party to a

12  commercial transaction that includes an arbitration agreement there must be written acceptance of

13  both parties and that no one provided such a written acceptance on behalf of Costa Rica Rent a Car.

14  Opposition, ECF No. 44 at 8-10.  In support of this argument, Mr. Martin's counsel submits a

15  declaration attaching: (1) an uncertified translation from http://translate.google.com that purports to

16  be Article 18 of Law 7727 (Law for the Alternative Resolution of Conflicts); (2) a chapter from *The*

17  *International Comparative Legal Guide to International Arbitration 2007* (Global Legal Group);

18  and (3) a screenshot of an article from a website, http://www.fijatevos.com, that discusses Costa

19  Rican law.  *See* McGuinn Declaration, ECF No. 44-1, Exs. 1-3.

20      A court determining foreign law "may consider any relevant material or source, including

21  testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

22  Fed. R. Civ. P. 44.1.  "Although, pursuant to Rule 44. 1, courts may ascertain foreign law through

23  numerous means, expert testimony accompanied by extracts from foreign legal materials has been

24  ――――――――――

25      [9] Mr. Martin argues that Mr. Calderon lacks personal knowledge about whether Mr. Martin
    actually was given a copy of the folder jacket or not.  Opposition, ECF No. 44 at 10-11.  As Mr.
26  Calderon was not there when Mr. Martin signed the car rental agreement, this is true.  It does not
    matter, though, because Mr. Calderon only declares that the folder jacket he submitted is the one that
27  was in use at the time Mr. Martin signed the car rental agreement, and, as stated above, the car rental
    agreement incorporates the terms of the folder jacket.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   and will likely continue to be the basic mode of proving foreign law." *Universal Sales Co., Ltd. v.*

2   *Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir.1999) (citation omitted).  Mr. Martin's counsel's

3   declaration is not expert testimony, and the documents submitted are of questionable accuracy.  The

4   court finds Mr. Martin's argument regarding Costa Rican law unsupported.[10]

5       Accordingly, the court finds that a valid arbitration agreement exists.

6   B.  Whether Hertz May Enforce the Arbitration Agreement

7       The FAA "imposes certain rules of fundamental importance, including the basic precept that

8   arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,

9   S.Ct. 1758, 1773 (2010) (quoting *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland*

10  *Stanford Univ.*, 489 U.S. 468, 479 (1989)).[11]  "The right to compel arbitration stems from a

11  contractual right," which generally "may not be invoked by one who is not a party to the agreement

12  and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4

13  F.3d 742, 744 (9th Cir. 1993) (citation omitted).

14      "The courts have made clear, however, that an obligation to arbitrate does not attach only to

15  those who have actually signed the agreement to arbitrate.  In certain circumstances, a signatory can

16  compel a nonsignatory to arbitrate.  For example, a nonsignatory may be bound by an agreement to

17

18          [10] In any event, the court briefly conducted its own internet-based research and found other
19  "relevant material" that suggests that the law Mr. Martin cites may no longer apply. *See* Kluwer
    Arbitration Blog, "Costa Rica has a New Arbitration Law,"
20  http://kluwerarbitrationblog.com/blog/2011/06/04/costa-rica-has-a-new-arbitration-law/ (last visited
    June 20, 2012).
21

22          [11] Under the FAA, the question of whether a nonsignatory can compel a signatory to arbitrate
23  a claim pursuant to an arbitration agreement is determined by the federal substantive law of
    arbitrability.  *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417
24  n.4 (4th Cir. 2000) ("The Supreme Court has directed that we 'apply ordinary state law principles
    that govern the formation of contracts,' and the 'federal substantive law of arbitrability.'  Thus state
25  law determines questions 'concerning the validity, revocability, or enforceability of contracts
    generally,' but the [FAA] and the Convention on the Recognition and Enforcement of Foreign
26  Arbitral Awards, enforced by 9 U.S.C. §§ 201-08 (1994), 'create a body of federal substantive law
    of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'") (internal
27  citations omitted); *see also Metalclad Corp. v. Ventana Environmental Organizational P'ship*, 109
    Cal. App. 4th 1705, 1712-13 (2003).
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    arbitrate under ordinary contract and agency principles, such as '1) incorporation by reference; 2)

2    assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Amisil Holdings Ltd. v.*

3    *Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) (quoting *Comer*, 436 F.3d

4    at 1101) (adopting magistrate judge's report and recommendation).

5    "Conversely, in certain circumstances, a nonsignatory can compel a signatory to arbitrate.  For

6    instance, a nonsignatory can enforce an arbitration agreement as a third-party beneficiary.  Also, a

7    signatory can be compelled to arbitrate at the non-signatory's insistence under 'an alternative

8    estoppel theory' – *i.e.*, 'because of the close relationship between the entities involved, as well as the

9    relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . .

10    and [the fact that] the claims were intimately founded in and intertwined with  the underlying

11    contract obligations.'" *Id.* at 830-31 (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64

12    F.3d 773, 778 (2d Cir. 1995) and citing  *Comer*, 436 F.3d at 1101) (internal citations and quotation

13    marks omitted).  Indeed, "courts have generally found . . . [that] arbitration is more likely to be

14    attained when the party resisting arbitration is a signatory." *Amisil*, 622 F. Supp. 2d at 831 (citing

15    *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005); *Merrill Lynch Investment*

16    *Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003); *Thomson-CSF*, 64 F.3d at 779).

17    Here, the court is faced with the latter circumstance, as Hertz, a nonsignatory to the car rental

18    agreement, contends that Mr. Martin, a signatory, should be compelled to arbitrate his claim under

19    third-party beneficiary and equitable estoppel theories.  MTC, ECF No. 37 at 8-11.

20    It is true that "nonsignatories can enforce arbitration agreements as third party beneficiaries."

21    *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *E.I. DuPont de Nemours & Co. v.*

22    *Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 195 (3d Cir. 2001)); *see also Macauley*

23    *v. Norlander*, 12 Cal. App. 4th 1, 7-8 (1992).  As the Ninth Circuit has explained:

24        California's contract principles on third party beneficiaries are well known.  Under
             California law, a "contract, made expressly for the benefit of a third party, may be
25        enforced by him at any time before the parties thereto rescind it."  Cal. Civ.Code §
             1559.  "A third party qualifies as a beneficiary under a contract if the parties intended
26        to benefit the third party and the terms of the contract make that intent evident."
             *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985)
27        (citing *Strauss v. Summerhays*, 157 Cal. App. 3d 806, 204 Cal. Rptr. 227, 233
             (1984)).  Although a third party need not be expressly named or identified in a
28        contract, a party must demonstrate "that [it] is a member of a class of persons for

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

whose benefit it was made." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 90 Cal. Rptr. 3d 453, 469 (2009) (internal quotation marks and citations omitted) (citing *Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal. App. 3d 1050, 1055, 219 Cal. Rptr. 626 (1985)). "Whether the third party is an intended beneficiary . . . involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Prouty v. Gores Tech. Gr.*, 121 Cal. App. 4th 1225, 18 Cal. Rptr. 3d 178, 184 (2004).

*Balsam v. Tucows, Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010).

Hertz argues that the language in the folder jacket stating that "any and all disputes, claims, differences, disputes or controversies arising out of or in relation to any aspect of this Agreement" shall be subject to arbitration suggests that Hertz was meant to be a third party beneficiary. MTC, ECF No. 37 at 10-11. The court does not believe that this language is sufficient, under the standard described above, to show that the parties intended the car rental agreement and folder jacket to be enforceable by third party beneficiaries (to the extent that Hertz even is a third party beneficiary). Indeed, a review of relevant authority suggests that it takes more than the "any and all disputes"-type language to support a finding of third party beneficiary enforceability. *See, e.g.*, *Chavez v. Bank of America*, No. C 10–653 JCS, 2011 WL 4712204, at *5-6 (N.D. Cal. Oct. 7, 2011) (finding that a third party beneficiary could enforce an arbitration agreement where "[t]he Terms of Use explicitly references Intersections as a third party beneficiary under the contract and identifies Intersections as the provider of the service being offered to BANA's customers. ); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, at *6 (N.D. Cal. Apr. 11, 2011) (finding that an arbitration agreement evinced an intent to cover claims against third parties where it required arbitration for "any claims against other parties [besides T–Mobile] relating to Services or Devices provided or billed to [the subscriber] (such as [T–Mobile's] suppliers, Dealers or third party vendors) whenever [the subscriber] also assert[s] claims against [T–Mobile] in the same proceeding").

Regardless, even though Hertz cannot enforce the arbitration agreement as a third party beneficiary, the court finds that Hertz may enforce it under equitable estoppel.[12] Two kinds of equitable estoppel may support a nonsignatory's right to compel arbitration: (1) when the signatory's

---

[12] The court notes that Mr. Martin did not respond to Hertz's equitable estoppel argument in his opposition. *See* Opposition, ECF No. 44 at 20.

claims against a nonsignatory arise out of the underlying contract; and (2) when the nonsignatory's

conduct is intertwined with a signatory's conduct.

First,

> equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Fujian Pacific Elec. Co. v. Bechtel Power Corp.*, No. C 04-3126 MHP, 2004 WL 2645974, at *5

(N.D. Cal. Nov. 19, 2004) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.

1999) and discussing federal appellate caselaw). *See, e.g., Sunkist Soft Drinks, Inc. v. Sunkist*

*Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) ("Although Sunkist does not rely exclusively on

the license agreement to support its claims, each claim presumes the existence of such an agreement.

We find that each counterclaim maintained by Sunkist arises out of and relates directly to the license

agreement."); *Amisil*, 622 F. Supp. 2d at 840 (quoting *Fujian*). It applies in such a situation because

"[a] signatory to an agreement cannot . . . 'have it both ways': it cannot on the one hand, seek to

hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an

arbitration provision, but on the other hand, deny the arbitration provision's applicability because

the defendant is a non-signatory." *Fujian*, 2004 WL 2645974, at *5; *see also Larson v. Speetjens*,

No. C 05-3176 SBA, 2006 WL 2567873, *4 (N.D. Cal. Sept. 5, 2006) ( "A party should not be

allowed to claim the benefit of the contract and simultaneously avoid its burdens").

Second,

> where the conduct of a nonsignatory is substantially interdependent with the conduct of a signatory, unless the nonsignatory is compelled to arbitrate, arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted. In other words, where a lawsuit against nonsignatories is inherently bound up with claims against a signatory, the court should compel arbitration in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration.

*Fujian*, 2004 WL 2645974, at *5 (quoting *MS Dealer*, 177 F.3d at 947 ). *See Westmoreland v.*

*Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002) (providing that a nonsignatory can compel arbitration

UNITED STATES DISTRICT COURT
For the Northern District of California

1    when the signatory raises allegations of substantially interdependent and concerted misconduct by

2    the nonsignatory and the other signatory); *Thomson-CSF*, 64 F.3d at 778 (noting that a signatory can

3    be bound to arbitrate with a nonsignatory "because of the close relationship between the entities

4    involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and

5    duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined

6    with the underlying contract obligations"); *see also Comer*, 436 F.3d at 1101 (acknowledging the

7    same but not applying the theory because, unlike here, it was a signatory, and not a nonsignatory,

8    who invoked estoppel).

9        Because Plaintiffs do not bring any claims against Costa Rica Rent a Car – and so there are no

10   claims against a signatory that are "inherently bound up" with claims against a nonsignatory – only

11   the first theory of equitable estoppel applies.  *See Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038,

12   1050 (N.D. Cal. 2006); *see also Southern Energy Homes, Inc. v. Kennedy*, 774 So.2d 540, 545 (Ala.

13   2000) (noting that "'intertwining' requires at least two threads to weave together").  And, upon

14   examination of Plaintiffs' claims, the court finds that Hertz may be allowed to compel Mr. Martin to

15   arbitrate his claims because his claims "makes reference to or presumes the existence of" the

16   underlying car rental agreement.  Plaintiffs have sued Hertz for strict liability and negligence, and

17   the entire factual basis for their claim relies upon the existence of the car rental agreement Mr.

18   Martin signed when he rented the car from Costa Rica Rent a Car.  Simply put, he would not have

19   been able to rent the car – and thus would not have had any relationship with Hertz – without

20   signing the rental agreement.  In such a situation, it would not be fair to allow Mr. Martin to rely

21   upon his signing the rental agreement to rent the car and to prevent Hertz from attempting to enforce

22   the contract's arbitration clause.

23   C.  Whether the Arbitration Agreement Is Unconscionable

24       Even if a valid arbitration agreement exists and Hertz is able to enforce it, Mr. Martin argues that

25   it is unenforceable because it is unconscionable.  Opposition, ECF No. 44 at 14-18.  Because Mr.

26   Martin is the party opposing enforcement of the otherwise valid arbitration agreement, he bears the

27   burden to prove this defense.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972

28   (1997).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    To determine whether an agreement to arbitrate is enforceable, the court must "apply ordinary

2    state-law principles that govern the formation of contracts." *Circuit City Stores v. Adams*, 279 F.3d

3    889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc.*, 514 U.S. at 944). "General contract

4    defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to

5    invalidate arbitration agreements." *Id.* (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687

6    (1996)); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (citing

7    same). "If the court as a matter of law finds the contract or any clause of the contract to have been

8    unconscionable at the time it was made the court may refuse to enforce the contract." Cal. Civ.

9    Code § 1670.5(a).[13]

10    Unconscionability has both a procedural and a substantive component. *Armendariz v. Found.*

11    *Health Psychcare Servs.*, 24 Cal.4th 83, 114 (2000). Although both components must be present

12    before a court will refuse to enforce a contract, a sliding scale applies: "the more substantively

13    oppressive the contract terms, the less evidence of procedural unconscionability is required to come

14    to the conclusion that the term is unenforceable, and vice versa." *Id.*

15    

16    _____

         [13] Although neither party mentions it, the court believes that it is worth noting that *AT&T*

17    *Mobility, LLC v. Concepcion*, 131 S.Ct. 1740 (2011), does not preclude Mr. Martin from arguing
       that an arbitration clause is unconscionable under California law. In *Concepcion*, the Supreme

18    Court reviewed the California rule that an arbitration agreement that is part of a consumer contract
       and that contains a class action waiver generally is unconscionable. (This rule is known as the

19    *Discover Bank* rule, for the California Supreme Court opinion so holding. *See Discover Bank v.*

20    *Superior Court*, 36 Cal.4th 148 (2005).) The Supreme Court held that the *Discover Bank* rule was
       preempted by the FAA because "[r]equiring the availability of classwide arbitration interferes with

21    fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."
       *Concepcion*, 131 S.Ct at 1748. This holding does not prevent a party from raising unconscionability

22    as an issue. As Judge Chen recently explained: "In *Concepcion*, the Supreme Court specifically

23    noted that the FAA 'permits agreements to arbitrate to be invalidated by generally applicable
       contract defenses, such as fraud, duress, or unconscionability, [although] not by defenses that apply

24    only to arbitration or that derive their meaning from the fact that than agreement to arbitrate is at

25    issue.' In short, arbitration agreements are still subject to unconscionability analysis." *Kanbar v.*
       *O'Melveny & Myers*, No. C-11-0892 EMC, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011); *see*

26    *also Mission Viejo Emergency Medical Assocs. v. Beta Healthcare Group*, 197 Cal. App. 4th 1146,

27    1158 n.4 (2011) ("Defendants appear to argue that AT & T essentially preempts all California law
       relating to unconscionability. We disagree, as the case simply does not go that far.").

28

1    1.  Procedural Unconscionability

2    "The procedural element of the unconscionability analysis concerns the manner in which the

3    contract was negotiated and the circumstances of the parties at that time." *Gatton v. T-Mobile USA,*

4    *Inc.*, 152 Cal. App. 4th 571, 581 (2007) (citing *Kinney v. United HealthCare Services, Inc.*, 70 Cal.

5    App. 4th 1322, 1329 (1999)).  "The element focuses on oppression or surprise." *Id.* (citing

6    *Armendariz*, 24 Cal.4th at 114).  "Oppression arises from an inequality of bargaining power that

7    results in no real negotiation and an absence of meaningful choice." *Id.* (citing *Flores v.*

8    *Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).  "Surprise is defined as 'the

9    extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed

10   form drafted by the party seeking to enforce the disputed terms.'" *Id.* (quoting *Stirlen v. Supercuts,*

11   *Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)) (internal quotation marks omitted).

12   Here, Mr. Martin argues that the arbitration agreement is procedurally unconscionable on the

13   basis of surprise.  Opposition, ECF No. 44 at 15-17.[14]  As support he points out that between "3,000

14   _____

15   [14] Mr. Martin also appears to suggest that the agreement is adhesive. *See* Opposition, ECF
16   No. 44 at 16.  A contract of adhesion is a "standardized contract, which, imposed and drafted by the
     party of superior bargaining strength, relegates to the subscribing party only the opportunity to
17   adhere to the contract or reject it." *Armendariz*, 24 Cal.4th at 113.  Mr. Martin declares that he was
     never advised to read the rental agreement and that no one explains the rental agreement to him, but
18   he does not declare that the rental agreement was presented to him on a take-it-or-leave-it basis.
     Martin Declaration, ECF No. 28-1 at 1, ¶¶ 3-4.  That the folder jacket is a standard form contract,
19   though, suggests that it is adhesive.  In any event, California law is unclear whether a finding that a
     contract is adhesive is also a finding of procedural unconscionability. *See, e.g., Graham v. Scissor-*
20   *Tail, Inc.*, 28 Cal.3d 807, 819-20 (1981) ("To describe a contract as adhesive in character is not to
     indicate its legal effect.  It is, rather, 'the beginning and not the end of the analysis insofar as
21   enforceability of its terms is concerned.'  Thus, a contract of adhesion is fully enforceable according
     to its terms unless certain other factors are present which, under established legal rules – legislative
22   or judicial – operate to render it otherwise.") (internal citations and footnotes omitted); *Roman v.*
     *Superior Court*, 172 Cal. App. 4th 1462, 1470 n.2 (2009) ("The adhesive nature of the contract will
23   not always make it procedurally unconscionable.  When bargaining power is not grossly unequal and
     reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal.")
24   (citations omitted); *Gatton*, 152 Cal. App. 4th at 585 ("[W]e hold that absent unusual circumstances,
     use of a contract of adhesion establishes a minimal degree of procedural unconscionability
25   notwithstanding the availability of market alternatives") (footnote omitted).  The clear import of
26   *Concepcion*, though, pushes against finding that an adhesive contract, without more, is *per se*
27   procedurally unconscionable. *See Concepcion*, 121 S.Ct. at 1750 ("[T]he times in which consumer

28

1  and 4,000 words," nearly of which use all capital letters, appear on the folder jacket "in tightly

2  compacted typeface of four columns," making them "nearly illegible." *Id*. at 17. Moreover, the

3  arbitration agreement is contained under the hearing "Applicable Law and Jurisdiction," "which fails

4  to bring the true import of the paragraph to the reader's attention." *Id*.

5      Surprise may be based on the arbitration agreement's location. *Newton v. American Debt*

6  *Services, Inc.*, No. C–11–3228 EMC, --- F. Supp. 2d ----, 2012 WL 581318, at *7 (N.D. Cal. Feb.

7  22, 2012) (citing *Sanchez v. Valencia Holding Co.*, LLC, 201 Cal. App. 4th 74, 91 (2011)). In

8  *Newton*, for example, the court found procedural unconscionability where the arbitration clause was

9  located on the back of a double-sided agreement, which was incorporated by reference into the

10  primary contract and not contained within the contract itself, and where the plaintiff was not

11  required to sign any part of the incorporated agreement, including the arbitration clause. *Id*.

12      The location of the arbitration agreement on the folder jacket at issue here is similarly

13  problematic. First, it is found on the folder jacket and not on the rental agreement that Mr. Martin

14  signed. *See* Calderon Declaration, ECF No. 39, Ex. C. Mr. Martin did not have to sign or initial

15

16  ───────────────

17  contracts were anything other than adhesive are long past."); *see also id*. at 1753 (Thomas, J.,
    concurring) ("As I would read it, the FAA requires that an agreement to arbitrate be enforced unless

18  a party successfully challenges the formation of arbitration agreement, such as by proving fraud or
    duress."). Indeed, recent federal opinions considering this question post-*Concepcion*, seem to agree.

19  *See, e.g., Grabowski v. C.H. Robinson Co.*, No. 10cv1658, 2011 WL 4353998, at *10 (S.D. Cal. Sep.
    19, 2011) ("Plaintiff has presented evidence that the agreements were presented on a 'take it or leave

20  [it]' basis, with little or no option for the employee to negotiate. In light of the Supreme Court's
    decision in *Concepcion*, however, the Court does not find that the adhesive nature of the agreement

21  weighs strongly in favor of procedural unconscionability.") (citing *Concepcion*, 121 S.Ct. at 1750);
    *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC (JCGx), 2011 WL 4442790, at *3 (C.D. Cal. Sep.

22  16, 2011) ("Here, the arbitration agreement is not procedurally unconscionable. Although Plaintiffs
    assert the arbitration agreement was a contract of adhesion, presented a mandatory condition of

23  employment, '[t]he adhesive nature of [a] contract will not always make it procedurally
    unconscionable. When bargaining power is not grossly unequal and reasonable alternatives exist,

24  oppression typically inherent in adhesion contracts is minimal.'") (quoting *Roman*, 172 Cal. App.
    4th at 1470 n.2); *Bernal v. Burnett*, No. 10-cv-01917-WJM-KMT, 2011 WL 2182903, at *6 (D.

25  Colo. June 6, 2011) ("[T]he fact that the contract at issue in *Concepcion* was an adhesion contract
    did not affect the Supreme Court's analysis and, indeed, the majority in *Concepcion* appears to be

26  little troubled by that fact. As a result, this Court has no alternative but to discount the weight to be

27  attributed the adhesive nature of the Arbitration Agreements at issue here.").

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  anywhere on the folder jacket (and, in fact, he declares that he may not have even received the folder

2  jacket).  Martin Declaration, ECF No. 26-1 at 2, ¶ 7.  Second, as Mr. Martin pointed out, while the

3  arbitration agreement was not in all capital letters (like the other terms and conditions) and was set

4  off with a subject heading, it was in exceedingly small print at the corner of a document (the folder

5  jacket) that is covered with several thousand other words.  *See* Calderon Declaration, ECF No. 39,

6  Ex. C.  A simple look at the folder jacket makes it clear that any attempt to highlight the arbitration

7  clause was unsuccessful.  *See id.*  Simply put, the arbitration agreement most certainly is "hidden in

8  the prolix" folder jacket.  On these facts, the court finds that the arbitration agreement is moderately

9  procedurally unconscionable.[15]

10  <u>2. Substantive Unconscionability</u>

11  Even so, for Mr. Martin to defeat Hertz's motion, the arbitration agreement would have to be

12  substantively unconscionable as well.  *Armendariz*, 24 Cal. 4th at 114.  Substantive

13  unconscionability focuses on the harshness and one-sided nature of the substantive terms of the

14  contract.  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982).  An agreement

15  to arbitrate will satisfy this general standard for substantive unconscionability if the agreement lacks

16  a "modicum of bilaterality."  *Armendariz*, 24 Cal. 4th at 117.  Whether an arbitration agreement is

17  sufficiently bilateral is determined by an examination of the actual effects of the challenged

18  provisions.  *Ellis v. McKinnon Broadcasting Co.*, 18 Cal. App. 4th 1796, 1803 (1993) ("Substantive

19  unconscionability . . . refers to an overly harsh allocation of risks or costs which is not justified by

20  the circumstances under which the contract was made.") (internal quotation marks omitted).

21  Mr. Martin argues that the arbitration agreement is substantively unconscionable because it

22  requires that any arbitration will be governed by CICA's procedural rules, and those rules may not

23  _____

24  [15] The court also notes that, at least in the employment context, the failure to provide a party to an arbitration agreement with the arbitral forum's rules can support a finding of procedural unconscionability.  *See Trompeter v. Ally Financial, Inc.*, No. C 12–00392 CW, 2012 WL 1980894, at *4 (N.D. Cal. June 1, 2012) (citing *Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387, 393 (2010) (noting that numerous cases have held that the failure to provide a copy of the arbitration rules to which an employee would be bound supports a finding of procedural unconscionability)).  Here, although Mr. Martin does not bring it up, it appears that he was not provided with CICA's arbitration rules.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    allow for any pre-arbitration discovery.  Opposition, ECF No. 44 at 17-18.[16]  Hertz argues that this

2    does not render the arbitration agreement substantively unconscionable because any limitations on

3    pre-arbitration discovery would affect both parties equally.  Reply, ECF No. 49 at 13.

4         Prior to the Supreme Court's ruling in *Concepcion*, numerous courts, at both the state and federal

5    level, found arbitration agreements substantively unconscionable where the rules of the arbitral

6    forum allowed for only minimal discovery or where the affect of the discovery rules operated solely

7    to one side's benefit.  *See, e.g., Ontiveros v. DHL Express (USA), Inc.*, 164 Cal. App. 4th 494, 513

8    (2008) (finding arbitration agreement substantively unconscionable because it allowed for only one

9    deposition absent a showing of substantial need); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 716–17

10   (2004) (finding arbitration agreement was substantially unconscionable because, "[t]hough NCR

11   contends that the ACT policy's limits on discovery are mutual because they apply to both parties,

12   the curtailment of discovery to only two depositions does not have mutual effect and does not

13   provide Fitz with sufficient discovery to vindicate her rights"); *see also Doubt v. NCR Corp.*, No. C

14   09-05917 SBA, 2010 WL 3619854, at *7 (N.D. Cal. Sep. 13, 2010) (citing *Fitz* and finding

15   arbitration agreement substantively unconscionable where it limited discovery to only two

16   depositions (aside from depositions of any expert witnesses expected to testify at the hearing) unless

17   the arbitrator found a "compelling need to allow it").  Indeed, Mr. Martin relies on pre-*Concepcion*

18   decisions in support of her argument.  *See* Opposition, ECF No. 44 at 18 (citing *Fitz*, 118 Cal. App.

19   4th at 717-18; *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 118-19 (2004); *Kinney*

20   *v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1322 (1999)).

21        *Concepcion*, however, suggests that limitations on arbitral discovery no longer support a finding

22   of substantive unconscionability.  The Supreme Court provided the following guidance:

23             When state law prohibits outright the arbitration of a particular type of claim, the
             analysis is straightforward: The conflicting rule is displaced by the FAA.  *Preston v.*
24           *Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008).  But the inquiry

25

26        [16] The CICA arbitration rules do not affirmatively state that no pre-arbitration discovery is
     allowed, but they also do not affirmatively allow for any discovery devices to be used.  *See*
27   McGuinn Declaration, ECF No. 28-2, Ex. 1.  The rules do suggest that the CICA arbitrators can
     "order" the parties to provide "evidence," but there is no stated standard for when such an order
28   could be obtained.  *See id.* at 16, Art. 28.

UNITED STATES DISTRICT COURT
For the Northern District of California

becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration.  In *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist "'at law or in equity for the revocation of any contract.'"  *Id.*, at 492, n.9, 107 S.Ct. 2520 (emphasis deleted).  We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot."  *Id.*, at 493, n.9, 107 S.Ct. 2520.

An obvious illustration of this point would be a case finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery.  The rationalizations for such a holding are neither difficult to imagine nor different in kind from those articulated in *Discover Bank*.  A court might reason that no consumer would knowingly waive his right to full discovery, as this would enable companies to hide their wrongdoing.  Or the court might simply say that such agreements are exculpatory-restricting discovery would be of greater benefit to the company than the consumer, since the former is more likely to be sued than to sue.  *See Discover Bank*, *supra*, at 161, 30 Cal. Rptr. 3d 76, 113 P.3d, at 1109 (arguing that class waivers are similarly one-sided).  And, the reasoning would continue, because such a rule applies the general principle of unconscionability or public-policy disapproval of exculpatory agreements, it is applicable to "any" contract and thus preserved by § 2 of the FAA.  In practice, of course, the rule would have a disproportionate impact on arbitration agreements; but it would presumably apply to contracts purporting to restrict discovery in litigation as well.

Other examples are easy to imagine.  The same argument might apply to a rule classifying as unconscionable arbitration agreements that fail to abide by the Federal Rules of Evidence, or that disallow an ultimate disposition by a jury (perhaps termed "a panel of twelve lay arbitrators" to help avoid preemption).  Such examples are not fanciful, since the judicial hostility towards arbitration that prompted the FAA had manifested itself in "a great variety" of "devices and formulas" declaring arbitration against public policy.  *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 406 (C.A.2 1959).

*Concepcion*, 131 S.Ct. at 1747.  Although there is a difference between a failure to provide for "judicially monitored discovery" and a failure to affirmatively allow for any discovery devices to be used, the court believes the above reasoning applies with equal force here.  And although they do not cite *Concepcion*, many post-*Concepcion* federal district court decisions taking up this issue suggest the same.  *See, e.g.*, *Simmons v. Morgan Stanley Smith Barney, LLC*, No. 11cv2889 WQH-MDD, 2012 WL 1900110, at *11-12 (S.D. Cal. May 24, 2012); *Valle v. Lowe's HIW, Inc.*, No. 11-1489 SC, 2011 WL 3667441, at *8 (N.D. Cal. Aug. 22, 2011); *Pilitz v. Bluegreen Corp.*, No. 6:11-cv-388-Orl-19KRS, 2011 WL 3359641, at *5 (M.D. Fla. Aug. 4, 2011); *Hopkins v. World Acceptance Corp.*, No. 1:10-cv-03429-SCJ, 798 F. Supp. 2d 1339, 1349-50 (N.D. Ga. 2011); *Tierra Right of Way*

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Servs., Ltd. v. Abengoa Solar, Inc.*, No. CV-11-00323-PHX-GMS, 2011 WL 2292007, at *5 (D.

2   Ariz. June 9, 2011); *but see Unimax Express, Inc. v. Cosco North America, Inc.*, No. CV 11–02947

3   DDP (PLAx), 2011 WL 5909881, at *4 (C.D. Cal. Nov. 28, 2011) (finding arbitration agreement to

4   be substantively unconscionable where one party would have had to "articulate its arguments with a

5   clarity bordering on prescience, for it has no right to discovery and will have no opportunity to rebut

6   the other party's response).

7          In addition, Hertz's counsel stated at the June 21, 2012 hearing that Hertz had already

8   voluntarily produced some discovery to Plaintiffs and that Hertz would continue to act in good faith

9   in this regard.[17]   The parties are deposing witnesses, too.

10          Accordingly, the court finds that in this post-*Concepcion* landscape, the arbitration agreement is

11   not substantively unconscionable.  *See Concepcion*, 131 S.Ct. at 1747.

12                                    **V.  CONCLUSION**

13          Based on the foregoing, the court finds that the arbitration agreement at issue is procedurally

14   unconscionable, but not substantively unconscionable.  Hertz's motion to compel arbitration, then, is

15   GRANTED.

16          A Further Case Management Conference is scheduled for August 9, 2012.  As discussed at the

17   June 21, 2012 hearing, by that date, the parties should have completed their depositions and engaged

18   in the private mediation described in their March 29, 2012 case management conference statement.

19   *See* 3/29/2012 CMC Statement, ECF No. 33.  The parties then will be better situated to discuss their

20   next steps (including the interplay with the new, related case, *Lucas, et al. v. Daihatsu Motor Co., et

21   al.*, No. C12-02644 LB).

22          This disposes of ECF No. 37.

23

24          ─────────────

25          [17] Hertz's counsel also stated that Hertz did not have possession of certain documents related
       to the vehicle at issue (e.g., documents related to any repairs made to the car, etc.) because those

26     type of documents would be possessed by its licensee, Costa Rica Rent a Car.  The court suggested
       that Hertz review its license agreement(s) with Costa Rica Rent a Car to see if it had authority to

27     request these documents (i.e., whether the documents are under Hertz's "control").  Hertz's counsel
       stated that he would look into this issue and would attempt to obtain and produce all relevant

28     documents.

**IT IS SO ORDERED.**

Dated: June 21, 2012

_____
LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-01581
ORDER GRANTING DEF'S MOTION TO COMPEL

20